Case number 245916 John Schnatter versus 247 Group LLC at all. Argument not to exceed 15 minutes per side. Mr. Abadie, you may proceed for the appellant. Good morning, your honors. May it please the court, I'm Michael Abadie on behalf of the Appellant Laundry Service. I'm reserving four minutes of my time. Very well. The district court made two reversible errors in this case. First, it rewrote an unambiguous contract to find a party that isn't named anywhere in it. And secondly, it found waiver even though Laundry Service timely asserted and consistently preserved its right to arbitrate while trying at the same time to follow the court's procedural directions. I want to begin with the contract formation question, which is the threshold question under section four of the Federal Arbitration Act. And this court has said repeatedly that's a question the court must decide. Here, there simply was no contract between Laundry Service and Mr. Schnatter. Counsel, I wonder before you hit the merits of this argument, could you talk about our interlocutory jurisdiction to even reach the contract formation question? Yes. This case, unquestionably, there's appellate jurisdiction over this case under section 16 of the FAA. The question of contract formation is unique and sui generis. This court has addressed it in cases like In Re Auto Parts at 951 F3rd at 380 in 2020. That was a case where the trial court had denied a motion to compel arbitration. It was appealed. This court addressed contract formation in that opinion. Did we in that case say that a contract had been formed or had we said there wasn't a contract? You said there was no contract. Right. So what about a case as here where the district court says after like a mini trial that there is indeed a contract? Yes. Well, we've cited a number of cases at pages two to four in our reply brief from various circuits saying that this court must and has appellate jurisdiction to determine that question. And have any of them found a contract to be existing? I believe so. I'd have to refer to the exact cases at page two to four of our brief. But nonetheless, this court has said repeatedly that is a threshold question. And you could always exercise pendant jurisdiction over that even if you found you didn't have mandatory appellate jurisdiction. Because that is a question that decides this case entirely. This court would never have to address waiver if it finds no contract. And it's going to have to address Right. But if it finds waiver, it doesn't necessarily have to opine on contract. Well, we could not be compelled. This court said in auto parts, for example, the In re auto parts case, arbitration is fundamentally a question of contract. Right. And so if this court were to find waiver, if that was your honor's hypothetical, we would be forced to litigate this case under a contract that we never signed. But didn't you indeed ask the district court to rule on waiver first? Without reaching contract formation? We, the plaintiff raised the question of waiver. And we told the district court that it could consider waiver, but also that it had to consider contract formation before we would ever have a trial. Didn't you jointly stipulate with your friends on the other side that the district court should reach waiver before it does the mini trial on? Well, it did not. It didn't do it, but to the extent that we have to decide under pendant jurisdiction, whether the issues are intricately intertwined, right, which you understand is the test. The fact that you have represented to the court that they're not, you know, matters to us. Well, perhaps that stipulation was not as artfully phrased as it should have been to observe the order of operations. But this court and section 4 of the FAA are unmistakably clear. There's really sort of a three-part order of operations test under that. The first question is akin to a Rule 12b6. Is a matter of law, is there a contract here that binds the party? If the court finds that that is not resolvable as a matter of law, then the second phase is this essentially summary judgment phase with discovery on the file, the court makes a determination, and then that's subject to appeal. We cite the Guidotti case from the Third Circuit in our brief. I think that lays that out nicely, and this court's cases follow the same rubric. So we believe that fundamentally you cannot have the question of whether there is a contract governs the question of arbitration. It is inextricably intertwined. You can't decide the arbitration question without deciding there is, in fact, a contract at play here. So we believe whether it's mandatory or pendant, that it is appropriate for the court to resolve it at this point in time. And we think that the evidence in this case clearly establishes there is no contract. The district court didn't decide the issue of the existence of the contract, did he? Yes, he did. Yes, he did. After the bench trial, the court said there is a binding contract that binds laundry service in his ruling following the bench trial. And we think that's wrong for a number of reasons. First of all, the plain language of the document never references laundry service. The only signature on that document is Mike Meeko. There's no indication anywhere in the document that Mike Meeko is affiliated with laundry service. If this were in a stack of all the team member NDAs signed by Papa John's employees, it wouldn't stand out at all, not one bit. The only way that the court found ambiguity is to actually start with the extrinsic evidence of what he believed the parties intended to do. But that's not how contract formation works in Kentucky. You have to start with the four corners of the document. So everybody proceeded with the litigation without at the inception deciding the arbitration issue? No, because the arbitration demand was seemingly pursued more so after the litigation had been going forward for quite some time. This is a little unusual, Your Honor, but let me put the context that explains why. When this case was filed, there was no arbitrable claim, period. He had a master services agreement. That's not the contract we're talking about today. It was an agreement between laundry service and Papa John's. And that's what Mr. Schnatter originally sued. And to our consideration point, he repeatedly conceded in the record that the access laundry service had to him, including on the May 22nd phone call, was because of the MSA. He conceded that repeatedly in this case. I'm happy to give you the record page citations on that. But there was no arbitrable claim until his first amended complaint was filed two years into the case. Weeks later, we filed a motion to dismiss that said this contract doesn't bind laundry service, but if it does, it must be in arbitration. It took a year for the court to rule on that motion. And he refused to decide the formation question at that time. And he indicated that perhaps a motion for arbitration could be right, but it was not. There was no magic about the timing. At that point, we were prepared to move forward, but the plaintiff amended again. He asserted a second amended complaint. And we were prepared to go forward with a Rule 12 motion again on the new claims and to once again argue there was no binding contract because we had no ruling on that. But the judge ordered us to do this weird omnibus motion. He didn't allow us to file a Rule 12. He put it all in one brief. This case has been going on a long time. We said we were concerned about procedural waiver, and that was the colloquy where the court and the plaintiff stipulated there be no waiver of rights, which includes our defense for arbitration. So yes, I agree that by the time we got to the motion to compel, it was a long way into this case. But the claim didn't arise right away. And parallel to all of this, Judge, there were non-arbitrable claims against a co-defendant, Wasserman Media, that all the discovery, all the litigation that took place would have gone on exactly the same for that defendant. So at every opportunity when this claim was put forward, Laundry Service said we're not bound by a contract. And the waiver standard, as this court knows, is intentional relinquishment of a known right. The moment in this case where our right to compel arbitration was fully known was when the district court ruled that the contract had been formed after that formation trial. Up until that point in time, we still disputed, and we still dispute, that we were bound by this contract. And there was never a finding that it bound us. And we were very concerned, under this court's ruling in Poly 1, that if we had filed a motion to compel, we would be waiving the formation question. That's what this court said. It cited a number of other cases from other circuits that have held that by filing a motion to compel under a contract, a party is surrendering the argument that that contract doesn't apply to them. And that was a catch-22 for us. Counsel, you mentioned that the district court judge asked you to kind of file this kind of massive omnibus motion that dealt with the 12v6 issues, summary judgment, and all of those sorts of things. Any of the claims that you could have. Why didn't you even mention any alternative arbitration in that motion? Once again, we had reserved our right. We said we worried about affirmative defenses. Rule 8, the affirmative defense of arbitration, is right there in the rule. It was our understanding. The judge has said, put everything in here. And indeed, the colloquy, when the judge says, I'm not going to rule on arbitration right now because there's no motion to compel in front of me. And then you say, hey, do we need to file it next week? Or can we wait? And the judge says, yeah, you can put it in the brief with everything. There's no fire drill. But then when the time comes to file your omnibus motion that has everything in it, you ask the judge to decide the breach issue. Yes, Your Honor. And we, well, two things. You're referring to two different colloquies. There was the colloquy at the argument where he says there's no fire drill. Separate colloquy after they filed a new amended complaint in November. These are a few months apart. And it was that second colloquy that we got the stipulation that we aren't waiving anything. And I want to be clear. Yes, we talked about breach. We never would have moved on the substance of the breach. But for the court saying you have to put it all in this one motion, we said we want to file a Rule 12. He's like, come on, let's just get this on with. We never would have moved on the breach on that question before getting resolution of whether there was a binding contract. I mean, it seems somewhat anomalous to say, well, we didn't think there was a contract. But if there was a contract, we're going to argue breach. But you didn't feel like you could argue, well, we don't think there's a contract. But if there is a contract, you have to arbitrate it. Right? And so the path that you asked the district court to do was to decide breach. The district court says, well, there's a triable issue on breach. Then you say, oh, no, no, no, please don't try that issue. We'd like to go to arbitration. May I finish? I see my opening time. The two responses I have to that are, I agree it's anomalous. We never would have done it but for the fact we were ordered to do it by the trial court in his very unusual ruling that told us not to file a Rule 12 but to skip to this omnibus motion. But secondly, Wasserman Media would have still been filing those same arguments. In the case, there's no arbitrable claim for Wasserman Media. We would have still had all those same arguments in the brief. It would have been under a different subheading. I don't think the fact that we did, we shouldn't be put to a Hobson's choice of do we follow the district court's order, which was made very clear and was accompanied by stipulation, or do we risk waiving our right to arbitrate by filing a motion to compel, which under this court's case law might have amounted to waiving. Thank you. Thank you. Good morning. Morning. Mr. Abadi, Ms. Honorable Court, let's begin where you were ending at the end of Mr. Abadi's presentation. This was intentional gamesmanship. They went to the trial court and sought two motions to dismiss to win on the merits. Not on jurisdictional issues, not on non-merit issues, but to win the entire case. When those were denied, they made the omnibus motion also for a motion for summary judgment on all the issues in the case. They asked the trial court to decide the case in their favor. And after three years of litigation, when the trial court looked at them and said, no, there's a tribal issue of fact on whether or not you breached this nondisclosure agreement, and it's going to go to a jury, and we were months before a jury trial, after almost four years of litigation, they for the first time moved to compel arbitration. That is just gamesmanship. It's intentional. It may have worked for them. It could have been an effective strategy, but it was an intentional strategy. The claim that they would have risked waiving their contract claim by bringing the motion to compel, as the trial court noted in its opinion, doesn't work because this had a AAA provision. And as this court has recognized, the AAA rules allow the arbitrator to decide gateway decisions such as contract formation. They had the right to take that to the arbitrator and have the arbitrator decide, was there an enforceable agreement? They weren't waiving it because of the selection of the form of the AAA. This court has recognized that repeatedly and was in the dominoes decision cited in the briefs. They made an intentional knowing decision. It was maybe good strategy. Maybe they felt better in front of the U.S. District Court judge on the summary judgment standard than they did in front of an arbitrator. That's a decision they have the right to make, but when they make it, they waive their right to arbitrate. And when you compare the cases in the Sixth Circuit where it's found waiver and you look at the amount of time, the number of depositions taken, the motions to compel discovery, seeking sanctions, all these requests for affirmative relief, this one goes way outside the bounds of every case where you have found waiver in the past. What about his comment that it would have the same proceedings with the other company involved? Well, first of all, that's not an issue, right? I mean, that's an issue between us and laundry service, right? As to Washman Media Group, they would have been in a different position had laundry service not been there, right? It was laundry service we alleged was the primary person who disclosed. Had it gone to arbitration, had they filed a motion to compel, we would have had a strategic decision of whether we pursued against Washman Media Group in the district court or whether we would just proceed arbitration with just the one party. That would have been a strategic choice we would have had to make then, Judge, but we never got to that moment because they chose not to proceed to arbitration. I can tell you realistically, you wouldn't proceed just against the one when you had the arbitration against the primary defendant, but that decision never, that moment never occurred because they chose not to file their motion to compel arbitration. And they could have filed it when the first complaint was filed because the master services agreement, MSA, that was alleged in the first complaint had the same arbitration. We're not asking whether they waived arbitration under the MSA. We're asking whether they waived arbitration under the NDA. So first amended complaint. Let me see here. Can I actually, can you respond to your friend's argument that, you know, the district court here made us do this omnibus motion and put everything in it. And so we needed to argue not just formation, but also breach. We didn't want to waive that. We had to put, you know, all of our 12B6, all of our summary judgment stuff together. And, um, you know, and, and, and so our, our, you know, kind of forced our hand to put everything in there. No, because when the second amended complaint, well, actually when the first amended complaint was filed and it alleged the NDA, at that moment, they had the ability to file the motion to compel arbitration because as we said, the gateway issue of formation would have gone to the arbitrator. They had it at that moment in time. They had the choice when the second amended complaint was filed, they had the same option. When the judge said, let's all file all these motions, they had the choice right then to independently say, no, let's not do that. We don't want to waive our right to arbitrate. Instead, we'll go ahead and file the motion to compel arbitration. They have no choice. If they want a decision on formation, do they have no choice but to have the arbitrator decided under the AAA terms? Can they, can they go through like a section four proceeding under the FAA and say, you know, and, and argue about contract formation and do the mini trial, like section four contemplates? If they want to preserve their right to arbitration, right, they do have to file the motion to compel, right? And the trial court has to determine, is there an arbitrable agreement? So that has to happen if they're going to file, if we oppose the motion to compel arbitration. Of course, we never had the chance at that time before we spent a lot of money and resources in the case to decide whether we would go, agree to proceed to arbitration, right? We didn't have that option at, if they'd made a timely request to make that decision. But to your point, they could, at that hearing, when they decide that, had they not waived it, we would have gone to arbitration. Would that have been binding on the arbitrator? Right. It's a question of collateral estoppel. That would have been a decision for the arbitrator to make, if that answers your question. Yeah. Thank you. On the question of jurisdiction, and I know this court expressed concerns about whether you should even considering whether there's an arbitrable agreement. Section 16 of the Arbitration Act gives this court very limited and narrow interlocutory review, right? This is the exception to the final judgment rule, right? It's a narrow exception. And it's only in that right to review orders denying a motion to compel arbitration. The finding there was not, that or an order denying a motion to compel arbitration, right? It's in the only order that denies your right to compel arbitration is defining a waiver. That's the only one. Your position is we don't have jurisdiction. It is. Over the contract formation. Just like, and counsel made a statement that they also made in their moving papers, that I think is inaccurate, which was, if you decide there's no contract formation that ends this case, that's not true. There are a host of other interlocutory opinions by the court were denied some of the claims that my client asserted against them. Tort claims that the court denied that are interlocutory that my client has never had the chance to appeal, right? It's a substantive issue in the case where the court entered an interlocutory opinion that this court cannot review at this time. Similarly, the decision that there is an arbitral agreement is an interlocutory finding by the court that in our view is still not subject to this court's jurisdiction, just like all those others. It has to wait until the final judgment rule because that order, that opinion, part of his opinion, did not deny them the right to arbitrate. In Rule 16, I mean Section 16 of the Federal Arbitration Act, it's clear that you can only appeal that portion that denies. It holds that in this situation? It's similar to the Ninth Circuit in the Bashir's case, which is cited in our brief. They recognize that when you have an opinion, even though the order has different parts to it, it's the part denying that is the important part. It's not square on, but it's the same analysis, and we advance that in our brief as well. I think that the panel is very aware of the issues. I don't want to waste your time if you don't have other questions. Apparently not. Thank you. Any rebuttal? Yes, Your Honor. A couple of points. On where counsel concluded, the jurisdictional point, I think Bashir's actually perfectly supports us. The same day the Ninth Circuit issued the decision he referenced that said no review of Section 230 immunity, they issued a separate opinion in the same case on the same day, reviewing contract formation on a Section 16 interlocutory appeal. So I don't think that case supports them, it supports us. Is it a denial that the contract was formed? I don't know off the top of my head, Your Honor. I don't want to give you the incorrect answer. Why don't you think that distinction matters? I'm not saying it doesn't matter. I'm saying I don't know the answer to that off the top of my head, Your Honor. I'm just being candid. But I do think the question, and this comes to another point around the invocation of the AAA rules, which the district court relied on heavily in his opinion, I think the district court misstated the law, and I think counsel this morning has stated old law in this circuit on what the AAA rules does. The opinion in In Re Auto Parts, Judge Clay, you were on the panel in that case, has a discussion of those cases that seem to suggest that merely by invoking the AAA rules, you delegate contract formation to an arbitrator. But this court goes on in Auto Parts to say it's axiomatic that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration. And then it goes on to say where a party contests either or both matters, that being formation or enforceability, then the court must resolve the disagreement. And it's quoting the Supreme Court in Granite Rock for that proposition. So again, formation is different than all these other questions that might arise as to a defense to liability. Formation is crucial and is an antecedent under Section 4, threshold question, of whether the motion to compel arbitration is properly before you. And while I concede... Is it fair to say that deciding formation is antecedent under Section 4 when Section 4 is triggered by a motion to compel arbitration? No, because the language of Section 4, Your Honor, says exactly that. Section 4 says the court, upon being satisfied, the making of an agreement for... Start with the first line of Section 4. I don't have the full portion of it in front of me. The first line of Section 4 says a party, I could read it for you, aggrieved by the alleged failure, neglect, or refusal of the other to arbitrate, right, you know, can, you know, essentially move to compel. And then it says, okay, they move to compel. And if there's a question about formation, then the district court can hold a mini-trial. All of Section 4 is about moving to compel... Is predicated by a motion to compel. Understood, Your Honor, but this is the unusual case where the defendant who would want to be in arbitration argues there's no binding agreement in the first place. We couldn't have filed a motion to compel arbitration under an agreement that doesn't exist, right? That would have been a strange thing. It was only after we had a known right, meaning the district court said, no, you don't, you know, this contract does bind you, that we then, it had ripened, and we promptly moved for arbitration. The Supreme Court has said, and this court said in Boykin quoting it, it's inconceivable that the operation of Section 4 depends upon which party filed the first action in the district court. That shouldn't determine how Section 4 works. This is a weird fact pattern in a number of ways. I just want to say one last time, Your Honor, too, about the formation question. Even putting aside the plain language argument, we do think there's absolutely no consideration here, if this court looks at it, because Schnatter admitted at page 211 in the record in his opposition to summary judgment that he understood his communication with defendants were occurring within the scope of the existing relationship as covered by the confidentiality provisions of the MSA, and then he went on to say in his amended complaint that the MSA covered communications between Schnatter and Laundry including the May 22, 2018 phone call. That's at page 1303. There are more. I'll stop there, but the point is Schnatter, when the MSA claim was still alive, repeatedly said to the court, the MSA is what gave them access to me. That's why I can sue for breach of the MSA. After he lost that claim, he turned around and his defense to the lack of consideration argument is, oh, they never had access to me under the MSA, but he consistently pleaded the opposite throughout this case. I appreciate the court's indulgence, and if you have no further questions, we'll rest on our briefs. The case is submitted.